**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DONALD J. TRUMP FOR PRESIDENT, INC.,
MATTHEW SEELY, ALEXANDRA SEELY,
PHILIP O'HALLORAN, ERIC OSTERGREN,
MARIAN SHERIDAN, MERCEDES WIRSING,
and CAMERON TARSA,

                    Plaintiffs,

          v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State, MICHIGAN
BOARD OF STATE CANVASSERS, WAYNE
COUNTY, MICHIGAN, and WAYNE COUNTY
BOARD OF COUNTY CANVASSERS,

                    Defendants.

CIVIL ACTION

Case No. 1:20-cv-01083-JTN-PJG

Hon. Janet T. Neff

**PROPOSED INTERVENOR-DEFENDANTS DNC AND MICHIGAN DEMOCRATIC
PARTY'S MOTION TO INTERVENE**

<u>EXPEDITED CONSIDERATION REQUESTED</u>

Proposed Intervenor-Defendants DNC and Michigan Democratic Party ("Proposed Intervenors") seek to participate as intervening defendants in the above-captioned lawsuit to safeguard the substantial and distinct legal interests of themselves, their member candidates, and their member voters, which will otherwise be inadequately represented in the litigation. For the reasons discussed in the memorandum in support, filed concurrently herewith, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b).

Proposed Intervenors respectfully request that the Court set an expedited schedule regarding this motion to intervene to allow for their participation in any briefing schedules and

hearings that are held. Otherwise, Proposed Intervenors' substantial constitutional rights are at risk of being severely and irreparably harmed, as described more fully in the memorandum in support of this motion.

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter and to file their proposed pre-motion conference request (Ex. 1) and proposed motion for extension of time to file a responsive pleading (Ex. 2).

Dated: November 14, 2020.

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
MILLER CANFIELD
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
Telephone: (517) 483-4918
eldridge@millercanfield.com

Joe M. Infante (P68719)
MILLER CANFIELD
99 Monroe Avenue NW
Suite 1200
Grand Rapids, Michigan 49503
(616) 454-8656
infante@millercanfield.com

Mary Ellen Gurewitz (P25724)
CUMMINGS & CUMMINGS
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
Telephone: (248) 733-3405
maryellen@cummingslawpllc.com

Marc E. Elias (DC #442007)
John M. Devaney (DC #375465)*
Jyoti Jasrasaria (DC #1671527)
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
jdevaney@perkinscoie.com
jjasrasaria@perkinscoie.com

William B. Stafford (WA #39849)*
Jonathan P. Hawley (WA #56297)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com
jhawley@perkinscoie.com

*Counsel for Proposed Intervenor-Defendants
DNC and Michigan Democratic Party*

*Admission pending

**CERTIFICATE OF SERVICE**

Scott R. Eldridge certifies that on the 14th day of November 2020, he served a copy of the

above document in this matter on all counsel of record and parties via the ECF system.

_s/ Scott R. Eldridge_

Scott R. Eldridge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., MATTHEW SEELY, ALEXANDRA SEELY, PHILIP O'HALLORAN, ERIC OSTERGREN, MARIAN SHERIDAN, MERCEDES WIRSING, and CAMERON TARSA, | CIVIL ACTION |
| Plaintiffs, | |
| v. | Case No. 1:20-cv-01083-JTN-PJG |
| JOCELYN BENSON, in her official capacity as Michigan Secretary of State, MICHIGAN BOARD OF STATE CANVASSERS, WAYNE COUNTY, MICHIGAN, and WAYNE COUNTY BOARD OF COUNTY CANVASSERS, | Hon. Janet T. Neff |
| Defendants. | |

**PROPOSED INTERVENOR-DEFENDANTS DNC AND MICHIGAN DEMOCRATIC PARTY'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants DNC and

Michigan Democratic Party ("Proposed Intervenors") move to intervene as defendants in this

lawsuit. Through this action, Plaintiffs seek to disrupt the lawful certification of ballots in Detroit

and throughout Michigan, based on nothing more than rank speculation, questionable evidence,

and fundamentally flawed legal claims. The relief they seek—wholesale disenfranchisement of

more than 5 million Michiganders—threatens Proposed Intervenors' distinct and protectable legal

interests. Proposed Intervenors represent a diverse group of Democrats, including elected officials,

candidates for elected office, state committee members, advisory caucuses, affiliate groups,

grassroots activists, and voters. Plaintiffs' requested relief threatens to deprive Proposed

Intervenors' individual members of the right to have their votes counted, undermine the electoral

prospects of their candidates, and divert their limited organizational resources. Proposed Intervenors' immediate intervention to protect those interests is therefore warranted.

In accordance with Rule 24(c) and this Court's Information and Guidelines for Civil Practice § IV(A)(1), attached are a proposed pre-motion conference request (Ex. 1), a proposed motion for extension of time to file a responsive pleading (Ex. 2), and a proposed motion to dismiss (Ex. 3).

## II.     BACKGROUND

### A.     The Election

On November 3, 2020, Michigan voters cast ballots in one of the most scrutinized elections in recent history, one that yielded record turnout in the midst of an ongoing pandemic. Despite unprecedented levels of observation and supervision, tall tales of phantom fraud have spread widely in the week since election day, including in Michigan, where current tallies have President-elect Joe Biden leading by nearly *150,000 votes*. *See Michigan Election Results*, N.Y. Times, https://www.nytimes.com/interactive/2020/11/03/us/elections/results-michigan.html (Nov. 14, 2020). The *Detroit Free Press* has reported that "Michigan has been no stranger to election-related falsehoods." *Clara Hendrickson* et al., *Michigan Was a Hotbed for Election-Related Misinformation: Here Are 17 Key Fact Checks*, Detroit Free Press (Nov. 9, 2020), https:// www.freep.com/story/news/local/michigan/detroit/2020/11/09/misinformation-michigan-16-election-related-fact-checks/6194128002. The paper has also thoroughly debunked the various rumors swirling around the popular consciousness, *see id.*—including several that can now be found among the allegations in Plaintiffs' complaint.

Indeed, although Plaintiffs' allegations are rife with stories of fraud undertaken by election workers at TCF Center, where Detroit's absent voter ballots were processed, this impression could

not be further from the truth. More than 100 Republican election challengers[1] observed the vote

tabulation on election day, *see* Aff. of David Jaffe ("Jaffe Aff.") ¶ 7 (attached as Ex. 4), and Donna

MacKenzie, a credentialed challenger, attested that "there were many more Republican Party

challengers than Democratic Party challengers" when she observed the count on November 4. Aff.

of Donna M. MacKenzie ("MacKenzie Aff.") ¶ 6 (attached as Ex. 5).[2] David Jaffe, another

credentialed challenger at TCF Center who observed the processing of ballots on November 2, 3,

and 4, has attested to his "perception that all challengers had a full opportunity to observe what

was going on and to raise issues with supervisors and election officials." Jaffe Aff. ¶ 10. He

confirmed that the procedures in place at TCF Center "allowed the challengers from each party

. . . to confirm the accuracy" of the duplication process. *Id.* ¶ 29. Ms. MacKenzie further attested

that "the ballot counting process was very transparent," that challengers "were given the

opportunity to look at ballots whenever issues arose," and that "[t]here were more than enough

challengers to have observers at each table." MacKenzie Aff. ¶¶ 4–5, 7.

While Mr. Jaffe and his fellow challengers—Democratic and Republican alike—"observed

minor procedural errors by election inspectors," they "called those errors to the attention of

---

[1] Election "challengers" are volunteers appointed by political parties or other organized groups who can observe the tabulation of absent voter ballots and make challenges under certain circumstances. *See, e.g.*, Mich. Comp. Laws §§ 168.730, 168.733. Challengers are *not* permitted to "make a challenge indiscriminately," "handle the poll books . . . or the ballots," or "interfere with or unduly delay the work of the election inspectors." *Id.* § 168.727(3). "Election inspectors," by contrast, are the poll workers appointed by local clerks who perform the tabulation duties. *See id.* § 168.677.

[2] Proposed Intervenor-Defendant Michigan Democratic Party submitted the attached affidavits of David Jaffe, Donna MacKenzie, and Joseph Zimmerman along with its opposition to the plaintiffs' motion for preliminary relief in *Costantino v. City of Detroit*, No. 20-014780-AW (Mich. Cir. Ct. Nov. 11, 2020), another challenge to Wayne County's vote tabulation and election returns currently pending in state court. The court in that case credited the testimony offered in these affidavits in denying the plaintiffs' requested relief. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 12 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 13).

3

supervisors, and were satisfied that the supervisors had corrected the error and explained proper procedure to the election inspectors." Jaffe Aff. ¶ 12. Indeed, Mr. Jaffe "spoke with several Republican challengers who expressed their view, and in a couple of cases their surprise, that there were no material issues in the counting." *Id*. Similarly, Ms. MacKenzie—who both observed ballot processing and spoke to other challengers about their experiences—neither witnessed nor heard of other observers challenging any of the fraudulent activities that allegedly occurred at TCF Center. *See* MacKenzie Aff. ¶¶ 8–19. Although Mr. Jaffe "received very few reports of unresolved issues from Democratic challengers," he "did receive many reports of conduct by Republican or" Election Integrity Fund ("EIF") "challengers that was aggressive, abusive toward the elections inspectors," and "clearly designed to obstruct and delay the counting of votes." Jaffe Aff. ¶ 13; *see also id.* ¶¶ 18, 20, 22–25, 30; MacKenzie Aff. ¶¶ 21–22. And although election officials attempted to maintain social distancing between workers and observers and ensure other preventative measures to curb the potential transmission of COVID-19, Mr. Jaffe "observed that Republican and EIF challengers repeatedly refused to maintain the mandated distance from the elections inspectors." Jaffe Aff. ¶¶ 17–19. Consequently, some "Republican or EIF challengers were removed from the room after intimidating and disorderly conduct, or filming in the counting room in violation of the rules." *Id.* ¶ 24. Mr. Jaffe concluded that "while some of the Republican challengers were there in good faith, attempting to monitor the procedure, the greater number of Republican and EIF challengers were intentionally interfering with the work of the elections inspectors so as to delay the count of the ballots and to harass and intimidate election inspectors." *Id.* ¶ 25. Indeed, Joseph Zimmerman, a credentialed challenger on behalf of the Lawyers Committee for Civil Rights Under Law, observed Republican challengers "discussing a plan to begin challenging every single vote on the grounds of 'pending litigation'" and then "repeatedly

challenging the counting of military ballots for no reason other than 'pending litigation.'" Aff. of Joseph Zimmerman ¶ 20 (attached as Ex. 6).

## B.     The Lawsuits

Despite widespread acknowledgement that no extensive fraud occurred on November 3, *see, e.g.*, Nick Corasaniti et al., *The Times Called Officials in Every State: No Evidence of Voter Fraud*, N.Y. Times (Nov. 10, 2020), https://www.nytimes.com/2020/11/10/us/politics/voting-fraud.html, various lawsuits have been filed in Michigan in an attempt to sow confusion and cast doubt on the legitimacy of the election—including a previous state court lawsuit filed by two Plaintiffs in this action, Donald J. Trump for President, Inc. (the "Trump Campaign") and Eric Ostergren. In that case, which featured many of the same claims now raised here, the Trump Campaign sought an immediate cessation of the counting of absentee ballots based on allegations of insufficient oversight. *See* Verified Compl. for Immediate Declaratory & Injunctive Relief, *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 4, 2020) (attached as Ex. 7). The Michigan Court of Claims denied the Trump Campaign's emergency motion for declaratory relief, concluding that it was unlikely to succeed on the merits and that, even "overlooking the problems with the factual and evidentiary record," the matter had become moot because "the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day." *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ, slip op. at 5 (Mich. Ct. Cl. Nov. 6, 2020) (attached as Ex. 8). The Trump Campaign has since sought an appeal. *See* Mot. for Immediate Consideration of Appeal Under MCR 7.211(C)(6), *Donald J. Trump for President, Inc. v. Benson*, No. 20-000225-MZ (Mich. Ct. App. Nov. 6, 2020) (attached as Ex. 9).

Other challenges to Michigan's election procedures and results have been similarly rejected as having no legal or factual merit. On election day, the Michigan Court of Claims denied an emergency motion to increase election oversight. *See Polasek-Savage v. Benson*, No. 20-000217-MM, slip op. at 3 (Mich. Ct. Cl. Nov. 3, 2020) (attached as Ex. 10). And on November 6, the Third Judicial Circuit Court for Wayne County rejected an EIF-backed effort to delay certification of that County's ballots:

> This Court finds that it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified. . . .
>
> A delay in counting and finalizing the votes from the City of Detroit without any evidentiary basis for doing so, engenders a lack of confidence in the City of Detroit to conduct full and fair elections. The City of Detroit should not be harmed when there is no evidence to support accusations of voter fraud.

*Stoddard v. City Election Comm'n*, No. 20-014604-CZ, slip op. at 4 (Mich. Cir. Ct. Nov. 6, 2020) (attached as Ex. 11).

Proposed Intervenor-Defendant Michigan Democratic Party was granted intervention in another challenge to Wayne County's returns in the Third Judicial Circuit Court. *See Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 2 (Mich. Cir. Ct. Nov. 13, 2020) (attached as Ex. 12). On November 13, the court denied the plaintiffs' motion for preliminary injunction in that case. After discounting affidavits reporting vague allegations of suspicious conduct at TCF Center and concluding that the "[p]laintiffs' interpretation of events is incorrect and not credible," the court observed that

> [i]t would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers. . . .
>
> Waiting for the Court to locate and appoint an independent, nonpartisan auditor to examine the votes, reach a conclusion and then finally report to the Court would involve untold delay. It would cause delay in establishing the Presidential vote tabulation, as well as all other County and State races. It would also undermine faith in the Electoral System.

*Costantino v. City of Detroit*, No. 20-014780-AW, slip op. at 11–13 (Mich. Cir. Ct. Nov. 13, 2020)

(attached as Ex. 13).

Plaintiffs have now filed yet another baseless attempt to disrupt the democratic process, and Proposed Intervenors move to intervene. Proposed Intervenor-Defendant DNC is a national political committee as defined in 52 U.S.C. § 30101 that is, among other things, dedicated to electing local, state, and national candidates of the Democratic Party in Michigan. Proposed Intervenor-Defendant Michigan Democratic Party is the Democratic Party's official state party committee for the State of Michigan, and its mission is to elect Democratic Party candidates to elected positions across Michigan, up and down the ballot. Both seek intervention on their own behalf and on behalf of their members, candidates, and voters.

### III.    STANDARD OF LAW

The requirements for intervention under Federal Rule of Civil Procedure 24 "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

To intervene as of right under Rule 24(a), the proposed intervenor must show that "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)).

"Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 759–60 (E.D. Mich. 2020) (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "On a timely motion, the court may permit anyone to intervene who . . . has

a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" from the defendants, regardless of whether it is "substantial." *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 800 (E.D. Mich. 2020) (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)).

## IV.    ARGUMENT

**A.    Proposed Intervenors are entitled to intervene as of right.**

Proposed Intervenors satisfy each of the four factors to intervene as of right under Rule 24(a).

### 1.    The motion to intervene is timely.

First, this motion is timely. Courts consider the following factors when deciding whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall*, 226 F.3d at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Zelman*, 636 F.3d at 284.

Proposed Intervenors' motion is indisputably timely. It follows three days after Plaintiffs filed their complaint, and before any significant action in the case. *See Priorities USA*, 448 F. Supp. 3d at 763 (concluding that it was "difficult to imagine a more timely intervention" where legislature moved to intervene twenty days after lawsuit was filed without being formally noticed). Proposed Intervenors seek to intervene to protect against irreparable harm to themselves and to safeguard their members' fundamental constitutional rights. This is unquestionably a "legitimate" purpose, and this is a case where "the motion to intervene was timely in light of the stated purpose for intervening." *Kirsch v. Dean*, 733 F. App'x 268, 275 (6th Cir. 2018) (quoting *Linton ex rel. Arnold v. Comm'r of Health & Env't*, 973 F.2d 1311, 1318 (6th Cir. 1992)). Nor is there any plausible risk of prejudice to the other parties if the motion to intervene is granted. Proposed Intervenors are prepared to follow any briefing schedule set by the Court and participate in any future hearings or oral arguments, without any delay. Finally, there are no unusual circumstances that should dissuade the Court from granting intervention.

### 2.   Proposed Intervenors have significant protectable interests that might be impaired by this litigation.

Second and third, Proposed Intervenors have significant and cognizable interests that might, as a practical matter, be impaired or impeded by Plaintiffs' action. Intervenors "'must have a direct and substantial interest in the litigation' such that it is a 'real party in interest in the transaction which is the subject of the proceeding.'" *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 372 (6th Cir. 2014) (citation omitted) (first quoting *Grubbs*, 870 F.2d at 346; and then quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005)). The Sixth Circuit has described this requirement as "rather expansive," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that courts should "construe[] liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). For example, an intervenor need not

have the same standing necessary to initiate a lawsuit, and the Sixth Circuit has rejected the notion

that Rule 24(a)(2) requires a "specific legal or equitable interest." *Mich. State AFL-CIO*, 103 F.3d

at 1245. The burden of establishing impairment of the protectable interest is "minimal," *id.* at 1247,

and an intervenor need only demonstrate that impairment is *possible*. *See Purnell*, 925 F.2d at 948.

Moreover, the Sixth Circuit "has recognized that the time-sensitive nature of a case may be a factor

in our intervention analysis," *Mich. State AFL-CIO*, 103 F.3d at 1247, and has found impairment

of interest where the proposed intervenor "may lose the opportunity to ensure that one or more

electoral campaigns in Michigan are conducted under legislatively approved terms that [the

proposed intervenor] believes to be fair and constitutional." *Id.* at 1247.

Here, Proposed Intervenors have several legally cognizable interests that might be impaired

by this lawsuit. First, Plaintiffs seek to disrupt the certification of lawfully cast ballots and cast

doubt on the legitimacy of the election of Proposed Intervenors' candidates. Courts have routinely

concluded that such interference with a political party's electoral prospects constitutes a direct and

legally cognizable injury. *See, e.g.*, *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th

Cir. 2006) (recognizing that "harm to [] election prospects" constitutes "a concrete and

particularized injury"); *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding that "the

potential loss of an election" is sufficient injury to confer Article III standing). Indeed, political

parties—including Proposed Intervenors—have been granted intervention in several recent voting

cases on these grounds. *See, e.g.*, *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL

3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention to state party and party committee

where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to

promote the franchise and ensure the election of Democratic Party candidates" (quoting *Paher v.

Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020))).

10

Moreover, Plaintiffs' requested relief of halting the certification process threatens the right to vote of Proposed Intervenors' members. "[T]o refuse to count and return the vote as cast [is] as much an infringement of that personal right as to exclude the voter from the polling place." *United States v Saylor*, 322 U.S. 385, 387–88 (1944). In turn, the disruptive and potentially disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to safeguard the successful completion of canvassing in Detroit and the certification of statewide results, thus implicating another of their protected interests. *See, e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (finding concrete, particularized harm where organization had to "redirect its focus" and divert its "limited resources" due to election laws); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding that electoral change "injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *see also Issa*, 2020 WL 3074351, at *3 (granting intervention and citing this protected interest).

### 3. Proposed Intervenors' interests are not adequately represented by the current parties to the litigation.

Finally, Proposed Intervenors' interests are not adequately represented by Plaintiffs or Defendants. "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[] prove that representation *may* be inadequate.'" *Mich. AFL-CIO*, 103 F.3d at 1247 (alteration in original) (emphasis added) (quoting

*Linton*, 973 F.2d at 1319). "The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs*, 870 F.2d at 347. Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)).

Here, while Defendants have an interest in defending the actions of state and local officials, Proposed Intervenors have different objectives: ensuring that the vote of every Democratic voter in Michigan is counted and safeguarding the election of Democratic candidates. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). That is the case here. Proposed Intervenors have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share. *See Paher*, 2020 WL 2042365, at *3 (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments"). As one court recently explained

12

under similar circumstances,

> [w]hile Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors [including state party] are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa*, 2020 WL 3074351, at *3 (citation omitted). Because Proposed Intervenors' particular interests are not shared by the present parties in this litigation, they cannot rely on Defendants or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Paher*, 2020 WL 2042365, at *3.

**B.     Alternatively, Proposed Intervenors should be granted permissive intervention.**

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention is warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60. For purposes of permissive intervention, proposed intervenors need only show that their interest is "'distinct' from the defendants, regardless of whether it is 'substantial.'" *Pub. Interest Legal Found.*, 463 F. Supp. 3d at 800 (quoting *League of Women Voters*, 902 F.3d at 579).

Proposed Intervenors easily meet the requirements of permissive intervention. First, as discussed in Part IV.A.1 *supra*, their motion is timely and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Moreover, Proposed Intervenors' interests are distinct and not adequately represented by the existing defendants. And Proposed

Intervenors will undoubtedly raise common questions of law and fact in opposing Plaintiffs' suit. In addition to challenging Plaintiffs' claims as a matter of law, *see* Ex. 3, Proposed Intervenors will also submit affidavits from election volunteers refuting the baseless allegations made in Plaintiffs' complaint. *See, e.g.*, Exs. 4–6.

## V.    CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask this Court to grant their motion to intervene.

Dated: November 14, 2020.                          Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
MILLER CANFIELD
One Michigan Avenue, Suite 900
Lansing, Michigan 48933
Telephone: (517) 483-4918
eldridge@millercanfield.com

Joe M. Infante (P68719)
MILLER CANFIELD
99 Monroe Avenue NW
Suite 1200
Grand Rapids, Michigan 49503
(616) 454-8656
infante@millercanfield.com

Mary Ellen Gurewitz (P25724)
CUMMINGS & CUMMINGS
423 North Main Street, Suite 200
Royal Oak, Michigan 48067
Telephone: (248) 733-3405
maryellen@cummingslawpllc.com

Marc E. Elias (DC #442007)
John M. Devaney (DC #375465)*
Jyoti Jasrasaria (DC #1671527)
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
jdevaney@perkinscoie.com
jjasrasaria@perkinscoie.com

William B. Stafford (WA #39849)*
Jonathan P. Hawley (WA #56297)*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
wstafford@perkinscoie.com
jhawley@perkinscoie.com

*Counsel for Proposed Intervenor-Defendants
DNC and Michigan Democratic Party*

*Admission pending

15