UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., MATTHEW, SEELY, ALEXANDRA SEELY, PHILIP O'HALLORAN, ERIC OSTERGREN, MARIAN SHERIDAN, MERCEDES WIRSING, and CAMERON TARSA, <br><br> Plaintiffs, <br><br> v. <br><br> JOCELYN BENSON, in her official Capacity as Michigan Secretary of State, MICHIGAN BOARD OF STATE CANVASSERS, WAYNE COUNTY, MICHIGAN, and WAYNE COUNTY BOARD OF COUNTY CANVASSERS, <br><br> Defendants. | No. 1:20-cv-01083 <br><br> Judge Janet T. Neff |

**BRIEF IN SUPPORT OF CITY OF DETROIT'S
<u>MOTION TO INTERVENE AS A DEFENDANT</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1
ARGUMENT .......................................................................................................................... 2
    I.    The City is Entitled to Intervene as a Matter of Right .......................................... 2
        A.    The City's Application is Timely ............................................................... 3
        B.    The City has a Substantial Legal Interest in this Matter ............................ 3
        C.    The City's Interests Will be Impaired without Intervention ...................... 5
        D.    The Existing Parties Cannot Fully Protect the City's Interests .................. 6
    II.    In the Alternative, Permissive Intervention Should be Granted ........................... 6
    III.    If Intervention is Granted, the City Intends to Seek Dismissal ............................ 7
CONCLUSION ....................................................................................................................... 7

# **INDEX OF AUTHORITIES**

**Cases**

*Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989) .............................................................................. 3

*Linton by Arnold v. Commissioner of Health and Environment,*
  *State of Tenn.*, 973 F.2d 1311 (6th Cir. 1992) .............................................................................. 6

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) ...................................... passim

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991) ............................................................. 2, 5

*U.S. v. City of Detroit*, 712 F.3d 925 (6th Cir. 2013) ..................................................................... 3

*United States v. Michigan*, 424 F.3d 438 (6th Cir. 2005) ............................................................... 6

**Statutes**

M.C.L. § 168.761d ........................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 24 .................................................................................................................. passim

## STATEMENT OF ISSUES PRESENTED

1. Whether the City of Detroit should be permitted to intervene in this matter as of right where the City meets each requirement for intervention as of right.

    The City of Detroit answers:  Yes.

2. Whether, in the alternative, the City of Detroit should be permitted to intervene in this matter by leave, where the City has met each requirement for permissive intervention.

    The City of Detroit answers:  Yes.

## **MOST CONTROLLING AUTHORITIES**

*Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989)

*Mich. State AFL–CIO v. Miller,* 103 F.3d 1240 (6th Cir. 1997)

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991)

*U.S. v. City of Detroit*, 712 F.3d 925 (6th Cir. 2014)

Fed R. Civ. P. 24

## INTRODUCTION

This is just one of the many lawsuits brought by the Trump campaign and its allies, seeking to interfere with the Michigan electoral process and overturn the State's election results and at least the second suit filed by Donald J. Trump For President, Inc. The first was filed in the Michigan Court of Claims, where Judge Cynthia Diane Stephens issued an Opinion and Order finding, in part, that "the day-to-day operation of an absent voter counting board is controlled by the pertinent city or township clerk." *Donald J Trump for President Inc et al v Jocelyn Benson*, Opinion and Order of Michigan Court of Claims, issued Nov 6, 2020 (Case No 20-000225-MZ) (Ex. 1). Despite that admonition, this case raises some of the identical claims, and, once again, the Plaintiffs have failed to name the City of Detroit or any other local authority as a defendant. The Complaint repeatedly alleges that Wayne County conducted the election in Detroit, displaying a fundamental misunderstanding of how elections operate in Michigan. This mistake might be understandable from parties or attorneys with little familiarity with Michigan's election system, but, here, Judge Stephens has explained our State's statutes to the lead Plaintiff and its counsel. The Complaint repeatedly refers to "election officials in Wayne County," as though their geographical location establishes the County's responsibility for the activities of a City operating within its borders. That carelessness permeates the Complaint, with multiple allegations and legal theories which reveal the absence of any serious understanding of Michigan election law, making claims that simply lack legitimate legal grounds.

Two other Complaints, making most of the same allegations as here, have also been rejected by the Wayne County Circuit Court. See *Costantino et al v City of Detroit et al*, Opinion and Order of Wayne County Circuit Court, issued Nov 13, 2020 (Case No 20-014780-AW) (Ex. 2); *Stoddard et al v City Election Commission of the City of Detroit et al*, Opinion and Order of Wayne County Circuit Court, issued Nov, 6 2020 (Case No 20-014604-CZ) (Ex. 3).

1

As in the previous lawsuits, Plaintiffs here do not—and cannot—provide any legitimate evidence of voter fraud. They rely exclusively on debunked conspiracy theories. The allegations in this lawsuit—nearly all of which relate to the City of Detroit—have already been rejected at least three times. The claims were rejected in two separate lawsuits by Chief Judge Timothy Kenny of the Wayne County Circuit Court and by Judge Stephens in the Michigan Court of Claims.

The City of Detroit, not the County of Wayne, should have been named as the entity which operated the absent voter counting boards in Detroit. The City is the entity which can best address these spurious legal and factual claims. The City should be allowed to intervene, as a matter of right or of leave, to protect itself and its residents from this attack on the City and its residents.

**ARGUMENT**

**I.    The City is Entitled to Intervene as a Matter of Right**

Intervention as of right is governed by Fed. R. Civ. P. 24. The Rule states:

(a)    **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

(1)    is given an unconditional right to intervene by a federal statute; or

(2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Rule 24 is to be broadly construed in favor of potential intervenors. *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991).

A party seeking to intervene as of right under Fed. R. Civ. P. 24(a) must establish four elements:  (1) the timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) the impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before

2

the court." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). The City meets each of the required elements.

### A. The City's Application is Timely

The timeliness of a motion to intervene is determined by the circumstances of the motion. *Grubbs v. Norris*, 870 F.2d 343, 345-46 (6th Cir. 1989). To determine whether the motion is timely, the reviewing court considers the following factors: "(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention." *U.S. v. City of Detroit*, 712 F.3d 925, 930-31 (6th Cir. 2013) (citing to *Grubbs*, 870 F.2d at 345-46).

The City's application to intervene is timely. The City filed its Motion only four days after the Complaint was filed. No hearings or proceedings have yet been held. The City is intervening to preserve the right to vote for hundreds of thousands of Detroit residents, and to defend the conduct of City election officials against baseless allegations. There is no prejudice from intervention, because there was no delay in seeking intervention. Finally, the unconstitutionality and severity of Plaintiffs' requested relief militates in favor of granting intervention, and there are no unusual circumstances weighing against intervention.

### B. The City has a Substantial Legal Interest in this Matter

The Sixth Circuit subscribes to "a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO*, 103 F.3d, 1245. "The inquiry into the

3

substantiality of the claimed interest is necessarily fact-specific." *Id*. The City of Detroit has a substantial interest in preserving the right to vote of its citizens, validating the integrity of local election results and in defending the conduct of its election officials.

The City has a substantial interest in defending this lawsuit. While the City was not named in the Complaint as a defendant, nearly all of the allegations relate to the purported actions or inactions of the City. In fact, various allegations demonstrate that Plaintiffs fail to understand basic Michigan election law or the basic principles underlying Michigan elections. Plaintiffs repeatedly refer to Wayne County's processing and tabulation of absentee ballots, while, in fact, under Michigan election law, the initial processing and tabulation of absentee ballots is done at the City level. The processing and tabulation of absentee ballots at Hall E of the TCF Center was controlled by the City, not the County. At other times in their Complaint, Plaintiffs make direct (false) allegations against election officials at the Detroit Department of Elections and against City Election Inspectors. *See*, *e.g.*, Compl., ¶¶ 58-59.[1] The City has a significant interest in establishing the dates on which the ballot box in question was ordered and installed, to prove compliance with Michigan's Election Code. Indeed, most of the allegations are against City of Detroit inspectors or officials. The City has a right to defend against these frivolous allegations

The City also has a substantial interest in validating the outcome of its local elections. Plaintiffs' allegations give the impression that the sole item on the ballots at issue was the presidential election. On the contrary, the ballots which Plaintiffs seek to invalidate include local elections for positions such as the Detroit School Board. It is indisputable that the city has a significant interest in establishing that these local elections were conducted in compliance with all state and federal regulations.

---

[1] Plaintiffs inaccurately describe the statute. M.C.L. § 168.761d states that ballot boxes ordered and installed prior to October 1, 2020 are exempt from the video monitoring requirement.

Finally, the City has a substantial interest in protecting the voting rights of its citizens. Based exclusively on allegations which actually prove no misconduct occurred, Plaintiffs seek to disenfranchise all Detroit voters. That is, of course, the most anti-democratic measure imaginable. There is no conceivable way that any of Plaintiffs' frivolous allegations should result in a single voter being disenfranchised, let alone hundreds of thousands from the State's largest city. It is hard to conceive of a situation where a proposed intervenor would have a stronger interest than is present here.

### C. The City's Interests Will be Impaired without Intervention

"To satisfy [the third] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest **is possible** if intervention is denied." *Mich. State AFL–CIO,* 103 F.3d at 1247 (*citing Purnell,* 925 F.2d at 948. (emphasis added). "This burden is minimal." *Id.* Rule 24(a) does not require the intervenor to show that the interest will be impaired; it only has to demonstrate that it is possible. *Purnell,* 925 F.3d at 948.

It is not just "possible," it is a virtual certainty that the City's interests will be affected and could be impaired by this lawsuit. The City has an interest in protecting the voting rights of its citizens, affirming the integrity of local election results and defending the conduct of local election officials. Plaintiffs have not hidden the fact that their ultimate goal is to have hundreds of thousands of Detroit votes removed from Michigan's official tally. Moreover, this action may significantly undermine the faith and public confidence in the City's election results. For months, various groups have alleged widespread election fraud across the country without proof. Over the past week, much of the focus has been on certain cities in "battleground" states—with a strong emphasis on Detroit and Philadelphia. In just the past week, plaintiffs have filed multiple, similar lawsuits. Detroit has a strong interest in defending against Plaintiffs' attempt to disenfranchise all

5

Detroiters and to undermine confidence in the integrity of the City and the country's electoral process.

### D. The Existing Parties Cannot Fully Protect the City's Interests

A party seeking to intervene is required to show that its interests will not be adequately protected by existing parties to the litigation. *Michigan State AFL-CIO*, 103 F.3d at 1247. This is a minimal burden; a movant need only show that representation "**may** be inadequate." *Id*. (emphasis added) (quoting *Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992).

While the current defendants have an interest in defending against frivolous lawsuits, most of the allegations relate to the City of Detroit, not to the other Defendants. Although Plaintiffs make numerous allegations against the County of Wayne, the election was conducted by the City of Detroit. Thus, the allegations against the County, albeit false and frivolous, are really claims against the City. The City is best suited to respond to these attacks.

### II. In the Alternative, Permissive Intervention Should be Granted

In the alternative, this Court should permit the City to intervene pursuant to Fed. R. Civ. P. 24(b). The rule specifies that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The proposed intervenor should "establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005) (citing *Michigan State AFL–CIO*, 103 F.3d at 1248). "Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *U.S. v. Michigan*, 424 F.3d at 445.

6

The City should be permitted to intervene. This application to intervene is timely filed, and clearly the City, which should have been named as a party, has defenses to these frivolous claims that share common questions of law and fact.

### III.     If Intervention is Granted, the City Intends to Seek Dismissal

Because Fed. R. Civ. P. 24(c) requires a proposed motion for intervention to "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," the City has attached a proposed Answer. (Ex. 4).

The purpose of submitting a proposed pleading is to put the opposing party and court on notice of proposed defenses. If a party cannot demonstrate its ability to submit a legally valid Answer, that party should not be allowed to intervene. Here, Plaintiffs have satisfied the rule by including the accompanying legally valid Pleading. However, if intervention is granted, the City intends to file a Motion to Dismiss and is therefore also attaching to this Brief a proposed Pre-Motion Conference Request. (Ex. 5).

### CONCLUSION

For the foregoing reasons, the City of Detroit respectfully requests that this Honorable Court grant its Motion to Intervene as a Defendant in this matter.

Respectfully submitted,

November 16, 2020

**FINK BRESSACK**

By:     /s/ David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfink@finkbressack.com

7

**CITY OF DETROIT**
**LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
Charles N. Raimi (P29746)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.gov
raimic@detroitmi.gov
nosej@detroitmi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2020, I electronically filed the foregoing paper with the Clerk of the court using the electronic filing system which sends notice to all counsel of record.

FINK BRESSACK

By: */s/ Nathan J. Fink*
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI  48304
Tel: (248) 971-2500
nfink@finkbressack.com