# EXHIBIT 5

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., MATTHEW, SEELY, ALEXANDRA SEELY, PHILIP O'HALLORAN, ERIC OSTERGREN, MARIAN SHERIDAN, MERCEDES WIRSING, and CAMERON TARSA, <br><br> Plaintiffs, <br><br> v. <br><br> JOCELYN BENSON, in her official Capacity as Michigan Secretary of State, MICHIGAN BOARD OF STATE CANVASSERS, WAYNE COUNTY, MICHIGAN, and WAYNE COUNTY BOARD OF COUNTY CANVASSERS, <br><br> Defendants. | No. 1:20-cv-01083 <br><br> Judge Janet T. Neff |

## CITY OF DETROIT'S REQUEST FOR A PRE-MOTION CONFERENCE

**"There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."**

- Joint Statement from [federal government's] Elections Infrastructure Government Coordinating Council & The Election Infrastructure Sector Coordinating Executive Committees, issued Nov 12, 2020 (emphasis in original).

The City of Detroit, by and through its counsel, Fink Bressack, hereby requests a Pre-Motion Conference for the purpose of discussing its proposed dispositive motion pursuant to this Court's Guidelines for Civil Practice. The City requests the conference because it seeks to file a dispositive motion pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56.

This Court should reject this filing because these frivolous claims are already pending in Michigan State courts, where they should be adjudicated.[1] Indeed, the lead Plaintiff here—Donald J. Trump For President, Inc.—represented by the same counsel, currently has an application for leave to appeal pending in a lawsuit filed against the Secretary of State, in the Michigan Court of Claims.[2] While the Trump campaign may be dissatisfied with the rulings in state Court, it has no right to split its causes of action to forum shop. Abstention doctrines and the Electoral College Act of 1877 clearly militate against this Court's exercise of jurisdiction.

If this Court chooses to address the substantive claims, the Complaint should be dismissed because Plaintiffs fail to state a claim upon which relief may be granted and there is no genuine dispute as to any material fact. This lawsuit is frivolous. Plaintiffs fundamentally misunderstand the electoral process, even claiming that the County of Wayne processes and tabulates ballots in the City of Detroit, when it is clear under Michigan election law that the initial processing and

---

[1] *Costantino et al v City of Detroit et al*, Opinion and Order of Wayne County Circuit Court, issued Nov 13, 2020 (Case No 20-014780-AW) (Ex. 1) (plaintiffs' application for leave to appeal filed). *Stoddard et al v City Election Commission of the City of Detroit et al*, Opinion and Order of Wayne County Circuit Court, issued Nov, 6 2020 (Case No 20-014604-CZ) (Ex. 2).
[2] *Donald J Trump for President Inc et al v Jocelyn Benson*, Opinion and Order of Michigan Court of Claims, issued Nov 6, 2020 (Case No 20-000225-MZ) (Ex. 3).

1

tabulation of ballots is controlled by the city clerk. *See*, *e.g.*, M.C.L. § 168.641 et seq.; M.C.L. § 168.654 et seq.[3] Plaintiffs' allegations have already been rejected in three separate lawsuits, twice by the Wayne County Circuit Court, which addressed and rejected most of the relevant "factual" allegations in this lawsuit, (Exs. 1 and 2) and once by the Michigan Court of Claims (Ex. 3).

Even if every single allegation is given the presumption of truth—a presumption which does not apply to frivolous allegations—it is clear that Plaintiffs cannot possibly state a claim upon which relief may be granted.

First, Plaintiffs' allegations actually show that the process worked; what they construe as misconduct is evidence of best practices in processing and tabulating ballots. Most of their factual claims have already been explicitly debunked and rejected by Wayne County Circuit Court Chief Judge Timothy Kenny. For instance, Plaintiffs' cry fraud for ballots that were recorded in the City's electronic poll book ("EPB") with a birthdate of January 1,1900. The EPB is designed primarily for use in election day polling places, and therefore includes a birthdate field that must be completed to move to the next step. When using this software in an absent voter counting board, a birthdate is not necessary (or available to inspectors) to verify voters; absent ballots are verified by signature comparisons (a process which was completed before the ballots were delivered to the TCF Center). Since inspectors at the TCF Center did not have access to voters' birthdates, they completed the superfluous data field by noting an impossible birthdate as recommended by the Michigan Secretary of State and widely used in elections throughout the country. Similarly, what Plaintiffs characterize as "pre-dating" was actually notations of the Clerk's receipt stamp. All

---

[3] In prior (and still pending) litigation in the Michigan Court of Claims, Judge Cynthia Diane Stephens advised Plaintiff Donald J. Trump for President, Inc., of this Michigan law in her Opinion and Order. (Ex. 3). Nevertheless, although the Complaint is predicated on the processing and tabulation of ballots—mostly absentee ballots—in the City of Detroit, the Complaint repeatedly suggests that these activities were under the control of the County of Wayne.

absentee ballots at the TCF Center had been received by 8:00 p.m. on November 3, 2020. For a small number of ballots, the TCF Center inspectors had to note the receipt date because workers at the Clerk's office had failed to hit "save" after inputting the information. Or, the fact that an affiant says he saw the same signature on a batch of ballot envelopes, actually demonstrates that the Clerk's office did its job and signed the envelopes after verification.

Second, Plaintiffs rely on a "voter dilution" legal theory that does not comport with applicable law, including the law they purportedly rely upon.

Third, while the Complaint contains numerous extraneous, irrelevant, false and misplaced allegations, the actual legal Counts rely almost entirely on the false assertion that Republican ballot challengers were excluded from the TCF Center Hall E for a short period of time on November 4, 2020. That is simply not true; Republican ballot challengers were always in Hall E, even during the period of time that excess challengers from **both parties** were not re-admitted for safety reasons. But, even if it were true, since challengers are only part of the process because of Michigan law (see M.C.L. § 168.733), the "remedy" must comply with Michigan law. Unsurprisingly, wholesale disenfranchisement of hundreds of thousands of voters is not a remedy for an alleged violation of the challenger rules.

Fourth, there is no basis for any of the extraordinary relief sought, because Plaintiffs cannot submit a shred of evidence that there is a risk that the Wayne County Board of Canvassers or the Michigan Secretary of State may certify vote tallies which include improperly cast ballots. Speculation and debunked conspiracy theories are woefully insufficient.

Respectfully submitted,

November 16, 2020                    **FINK BRESSACK**

By:     /s/ David H. Fink
David H. Fink (P28235)

Darryl Bressack (P67820)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com

**CITY OF DETROIT**
**LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
Charles N. Raimi (P29746)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.goc
raimic@detroitmi.gov
nosej@detroitmi.gov

4

# EXHIBIT 1

STATE OF MICHIGAN

IN THE THIRD JUDICIAL CIRCUIT COURT FOR THE COUNTY OF WAYNE

Cheryl A. Costantino and
Edward P. McCall, Jr.
                        Plaintiffs,

                                                    Hon. Timothy M. Kenny
                                                    Case No. 20-014780-AW

City of Detroit; Detroit Election
Commission; Janice M. Winfrey,
in her official capacity as the
Clerk of the City of Detroit and
the Chairperson and the Detroit
Election Commission; Cathy Garrett,
In her official capacity as the Clerk of
Wayne County; and the Wayne County
Board of Canvassers,
                        Defendants.

_____/

# OPINION & ORDER

At a session of this Court
Held on: November 13, 2020
In the Coleman A. Young Municipal Center
County of Wayne, Detroit, MI

PRESENT: Honorable Timothy M. Kenny
                Chief Judge
                Third Judicial Circuit Court of Michigan

This matter comes before the Court on Plaintiffs' motion for preliminary injunction,

protective order, and a results audit of the November 3, 2020 election. The Court

having read the parties' filing and heard oral arguments, finds:

With the exception of a portion of Jessy Jacob affidavit, all alleged fraudulent claims

brought by the Plaintiffs related to activity at the TCF Center. Nothing was alleged to

1

have occurred at the Detroit Election Headquarters on West Grand Blvd. or at any polling place on November 3, 2020.

The Defendants all contend Plaintiffs cannot meet the requirements for injunctive relief and request the Court deny the motion.

When considering a petition for injunction relief, the Court must apply the following four-pronged test:

1. The likelihood the party seeking the injunction will prevail on the merits.

2. The danger the party seeking the injunction will suffer irreparable harm if the injunction is not granted.

3. The risk the party seeking the injunction would be harmed more by the absence an injunction than the opposing party would be by the granting of the injunction.

4. The harm to the public interest if the injunction is issued. *Davis v City of Detroit Financial Review Team*, 296 Mich. App. 568, 613; 821 NW2nd 896 (2012).

In the *Davis* opinion, the Court also stated that injunctive relief "represents an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity." *Id*. at 612 fn 135 quoting *Senior Accountants, Analysts and Appraisers Association v Detroit*, 218 Mich. App. 263, 269; 553 NW2nd 679 (1996).

When deciding whether injunctive relief is appropriate MCR 3.310 (A)(4) states that the Plaintiffs bear the burden of proving the preliminary injunction should be granted. In cases of alleged fraud, the Plaintiff must state with particularity the circumstances constituting the fraud. MCR 2.112 (B) (1)

Plaintiffs must establish they will likely prevail on the merits. Plaintiffs submitted seven affidavits in support of their petition for injunctive relief claiming widespread voter

fraud took place at the TCF Center.  One of the affidavits also contended that there was blatant voter fraud at one of the satellite offices of the Detroit City Clerk.  An additional affidavit supplied by current Republican State Senator and former Secretary of State Ruth Johnson, expressed concern about allegations of voter fraud and urged "Court intervention", as well as an audit of the votes.

In opposition to Plaintiffs' assertion that they will prevail, Defendants offered six affidavits from individuals who spent an extensive period of time at the TCF Center.  In addition to disputing claims of voter fraud, six affidavits indicated there were numerous instances of disruptive and intimidating behavior by Republican challengers.  Some behavior necessitated removing Republican challengers from the TCF Center by police.

After analyzing the affidavits and briefs submitted by the parties, this Court concludes the Defendants offered a more accurate and persuasive explanation of activity within the Absent Voter Counting Board (AVCB) at the TCF Center.

Affiant Jessy Jacob asserts Michigan election laws were violated prior to November 3, 2020, when City of Detroit election workers and employees allegedly coached voters to vote for Biden and the Democratic Party.  Ms. Jacob, a furloughed City worker temporarily assigned to the Clerk's Office, indicated she witnessed workers and employees encouraging voters to vote a straight Democratic ticket and also witnessed election workers and employees going over to the voting booths with voters in order to encourage as well as watch them vote.  Ms. Jacob additionally indicated while she was working at the satellite location, she was specifically instructed by superiors not to ask for driver's license or any photo ID when a person was trying to vote.

The allegations made by Ms. Jacob are serious.  In the affidavit, however, Ms. Jacob does not name the location of the satellite office, the September or October date these

3

acts of fraud took place, nor does she state the number of occasions she witnessed the alleged misconduct.  Ms. Jacob in her affidavit fails to name the city employees responsible for the voter fraud and never told a supervisor about the misconduct.

Ms. Jacob's information is generalized.  It asserts behavior with no date, location, frequency, or names of employees.  In addition, Ms. Jacob's offers no indication of whether she took steps to address the alleged misconduct or to alter any supervisor about the alleged voter fraud.  Ms. Jacob only came forward after the unofficial results of the voting indicated former Vice President Biden was the winner in the state of Michigan.

Ms. Jacob also alleges misconduct and fraud when she worked at the TCF Center. She claims supervisors directed her not to compare signatures on the ballot envelopes she was processing to determine whether or not they were eligible voters.  She also states that supervisors directed her to "pre-date" absentee ballots received at the TCF Center on November 4, 2020.  Ms. Jacob ascribes a sinister motive for these directives. Evidence offered by long-time State Elections Director Christopher Thomas, however, reveals there was no need for comparison of signatures at the TCF Center because eligibility had been reviewed and determined at the Detroit Election Headquarters on West Grand Blvd.  Ms. Jacob was directed not to search for or compare signatures because the task had already been performed by other Detroit city clerks at a previous location in compliance with MCL 168.765a.  As to the allegation of "pre-dating" ballots, Mr. Thomas explains that this action completed a data field inadvertently left blank during the initial absentee ballot verification process.  Thomas Affidavit, #12.  The entries reflected the date the City received the absentee ballot.  *Id.*

4

The affidavit of current State Senator and former Secretary of State Ruth Johnson essentially focuses on the affidavits of Ms. Jacob and Zachery Larsen. Senator Johnson believed the information was concerning to the point that judicial intervention was needed and an audit of the ballots was required. Senator Johnson bases her assessment entirely on the contents of the Plaintiffs' affidavits and Mr. Thomas' affidavit. Nothing in Senator Johnson's affidavit indicates she was at the TCF Center and witnessed the established protocols and how the AVCB activity was carried out. Similarly, she offers no explanation as to her apparent dismissal of Mr. Thomas' affidavit. Senator Johnson's conclusion stands in significant contrast to the affidavit of Christopher Thomas, who was present for many hours at TCF Center on November 2, 3 and 4. In this Court's view, Mr. Thomas provided compelling evidence regarding the activity at the TCF Center's AVCB workplace. This Court found Mr. Thomas' background, expertise, role at the TCF Center during the election, and history of bipartisan work persuasive.

Affiant Andrew Sitto was a Republican challenger who did not attend the October 29th walk- through meeting provided to all challengers and organizations that would be appearing at the TCF Center on November 3 and 4, 2020. Mr. Sitto offers an affidavit indicating that he heard other challengers state that several vehicles with out-of-state license plates pulled up to the TCF Center at approximately 4:30 AM on November 4th. Mr. Sitto states that "tens of thousands of ballots" were brought in and placed on eight long tables and, unlike other ballots, they were brought in from the rear of the room. Sitto also indicated that every ballot that he saw after 4:30 AM was cast for former Vice President Biden.

Mr. Sitto's affidavit, while stating a few general facts, is rife with speculation and guess-work about sinister motives.  Mr. Sitto knew little about the process of the absentee voter counting board activity.  His sinister motives attributed to the City of Detroit were negated by Christopher Thomas' explanation that all ballots were delivered to the back of Hall E at the TCF Center.  Thomas also indicated that the City utilized a rental truck to deliver ballots.  There is no evidentiary basis to attribute any evil activity by virtue of the city using a rental truck with out-of-state license plates.

Mr. Sitto contends that tens of thousands of ballots were brought in to the TCF Center at approximately 4:30 AM on November 4, 2020.  A number of ballots speculative on Mr. Sitto's part, as is his speculation that all of the ballots delivered were cast for Mr. Biden.  It is not surprising that many of the votes being observed by Mr. Sitto were votes cast for Mr. Biden in light of the fact that former Vice President Biden received approximately 220,000 more votes than President Trump.

Daniel Gustafson, another affiant, offers little other than to indicate that he witnessed "large quantities of ballots" delivered to the TCF Center in containers that did not have lids were not sealed, or did not have marking indicating their source of origin.  Mr. Gustafson's affidavit is another example of generalized speculation fueled by the belief that there was a Michigan legal requirement that all ballots had to be delivered in a sealed box.  Plaintiffs have not supplied any statutory requirement supporting Mr. Gustafson's speculative suspicion of fraud.

Patrick Colbeck's affidavit centered around concern about whether any of the computers at the absent voter counting board were connected to the internet.  The answer given by a David Nathan indicated the computers were not connected to the

internet. Mr. Colbeck implies that there was internet connectivity because of an icon that appeared on one of the computers. Christopher Thomas indicated computers were not connected for workers, only the essential tables had computer connectivity. Mr. Colbeck, in his affidavit, speculates that there was in fact Wi-Fi connection for workers use at the TCF Center. No evidence supports Mr. Colbeck's position.

This Court also reads Mr. Colbeck's affidavit in light of his pre-election day Facebook posts. In a post before the November 3, 2020 election, Mr. Colbeck stated on Facebook that the Democrats were using COVID as a cover for Election Day fraud. His predilection to believe fraud was occurring undermines his credibility as a witness.

Affiant Melissa Carone was contracted by Dominion Voting Services to do IT work at the TCF Center for the November 3, 2020 election. Ms. Carone, a Republican, indicated that she "witnessed nothing but fraudulent actions take place" during her time at the TCF Center. Offering generalized statements, Ms. Carone described illegal activity that included, untrained counter tabulating machines that would get jammed four to five times per hour, as well as alleged cover up of loss of vast amounts of data. Ms. Carone indicated she reported her observations to the FBI.

Ms. Carone's description of the events at the TCF Center does not square with any of the other affidavits. There are no other reports of lost data, or tabulating machines that jammed repeatedly every hour during the count. Neither Republican nor Democratic challengers nor city officials substantiate her version of events. The allegations simply are not credible.

Lastly, Plaintiffs rely heavily on the affidavit submitted by attorney Zachery Larsen. Mr. Larsen is a former Assistant Attorney General for the State of Michigan who alleged mistreatment by city workers at the TCF Center, as well as fraudulent activity by election workers.  Mr. Larsen expressed concern that ballots were being processed without confirmation that the voter was eligible.  Mr. Larsen also expressed concern that he was unable to observe the activities of election official because he was required to stand six feet away from the election workers.  Additionally, he claimed as a Republican challenger, he was excluded from the TCF Center after leaving briefly to have something to eat on November 4th.  He expressed his belief that he had been excluded because he was a Republican challenger.

Mr. Larsen's claim about the reason for being excluded from reentry into the absent voter counting board area is contradicted by two other individuals.  Democratic challengers were also prohibited from reentering the room because the maximum occupancy of the room had taken place.  Given the COVID-19 concerns, no additional individuals could be allowed into the counting area.  Democratic party challenger David Jaffe and special consultant Christopher Thomas in their affidavits both attest to the fact that neither Republican nor Democratic challengers were allowed back in during the early afternoon of November 4th as efforts were made to avoid overcrowding.

Mr. Larsen's concern about verifying the eligibility of voters at the AVCB was incorrect.  As stated earlier, voter eligibility was determined at the Detroit Election Headquarters by other Detroit city clerk personnel.

The claim that Mr. Larsen was prevented from viewing the work being processed at the tables is simply not correct.  As seen in a City of Detroit exhibit, a large monitor was

8

at the table where individuals could maintain a safe distance from poll workers to see what exactly was being performed.  Mr. Jaffe confirmed his experience and observation that efforts were made to ensure that all challengers could observe the process.

Despite Mr. Larsen's claimed expertise, his knowledge of the procedures at the AVCB paled in comparison to Christopher Thomas'.  Mr. Thomas' detailed explanation of the procedures and processes at the TCF Center were more comprehensive than Mr. Larsen's.  It is noteworthy, as well, that Mr. Larsen did not file any formal complaint as the challenger while at the AVCB. Given the concerns raised in Mr. Larsen's affidavit, one would expect an attorney would have done so.  Mr. Larsen, however, only came forward to complain after the unofficial vote results indicated his candidate had lost.

In contrast to Plaintiffs' witnesses, Christopher Thomas served in the Secretary of State's Bureau of Elections for 40 years, from 1977 through 2017.  In 1981, he was appointed Director of Elections and in that capacity implemented Secretary of State Election Administration Campaign Finance and Lobbyist disclosure programs.  On September 3, 2020 he was appointed as Senior Advisor to Detroit City Clerk Janice Winfrey and provided advice to her and her management staff on election law procedures, implementation of recently enacted legislation, revamped absent voter counting boards, satellite offices and drop boxes.  Mr. Thomas helped prepare the City of Detroit for the November 3, 2020 General Election.

As part of the City's preparation for the November 3rd election Mr. Thomas invited challenger organizations and political parties to the TCF Center on October 29, 2020 to have a walk-through of the entire absent voter counting facility and process.  None of Plaintiff challenger affiants attended the session.

On November 2, 3, and 4, 2020, Mr. Thomas worked at the TCF Center absent voter counting boards primarily as a liaison with Challenger Organizations and Parties.  Mr. Thomas indicated that he "provided answers to questions about processes at the counting board's resolved dispute about process and directed leadership of each organization or party to adhere to Michigan Election Law and Secretary of State procedures concerning the rights and responsibilities of challengers."

Additionally, Mr. Thomas resolved disputes about the processes and satisfactorily reduced the number of challenges raised at the TCF Center.

In determining whether injunctive relief is required, the Court must also determine whether the Plaintiffs sustained their burden of establishing they would suffer irreparable harm if an injunction were not granted.  Irreparable harm does not exist if there is a legal remedy provided to Plaintiffs.

Plaintiffs contend they need injunctive relief to obtain a results audit under Michigan Constitution Article 2, § IV, Paragraph 1 (h) which states in part "the right to have the results of statewide elections audited, in such as manner as prescribed by law, to ensure the accuracy and integrity of the law of elections."  Article 2, § IV, was passed by the voters of the state of Michigan in November, 2018.

A question for the Court is whether the phrase "in such as manner as prescribed by law" requires the Court to fashion a remedy by independently appointing an auditor to examine the votes from the November 3, 2020 election before any County certification of votes or whether there is another manner "as prescribed by law".

Following the adoption of the amended Article 2, § IV, the Michigan Legislature amended MCL 168.31a effective December 28, 2018.  MCL 168.31a provides for the Secretary of State and appropriate county clerks to conduct a results audit of at least

one race in each audited precinct.  Although Plaintiffs may not care for the wording of the current MCL 168.31a, a results audit has been approved by the Legislature.  Any amendment to MCL 168.31a is a question for the voice of the people through the legislature rather than action by the Court.

It would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers.  The Court cannot defy a legislatively crafted process, substitute its judgment for that of the Legislature, and appoint an independent auditor because of an unwieldy process.  In addition to being an unwarranted intrusion on the authority of the Legislature, such an audit would require the rest of the County and State to wait on the results.  Remedies are provided to the Plaintiffs.  Any unhappiness with MCL 168.31a calls for legislative action rather than judicial intervention.

As stated above, Plaintiffs have multiple remedies at law.  Plaintiffs are free to petition the Wayne County Board of Canvassers who are responsible for certifying the votes.  (MCL 168.801 and 168.821 et seq.) Fraud claims can be brought to the Board of Canvassers, a panel that consists of two Republicans and two Democrats.  If dissatisfied with the results, Plaintiffs also can avail themselves of the legal remedy of a recount and a Secretary of State audit pursuant to MCL 168.31a.

Plaintiff's petition for injunctive relief and for a protective order is not required at this time in light of the legal remedy found at 52 USC § 20701 and Michigan's General Schedule #23 – Election Records, Item Number 306, which imposes a statutory obligation to preserve all federal ballots for 22 months after the election.

In assessing the petition for injunctive relief, the Court must determine whether there will be harm to the Plaintiff if the injunction is not granted, as Plaintiffs' existing legal

11

remedies would remain in place unaltered.  There would be harm, however, to the Defendants if the Court were to grant the requested injunction.  This Court finds that there are legal remedies for Plaintiffs to pursue and there is no harm to Plaintiffs if the injunction is not granted.  There would be harm, however, to the Defendants if the injunction is granted.  Waiting for the Court to locate and appoint an independent, nonpartisan auditor to examine the votes, reach a conclusion and then finally report to the Court would involve untold delay.  It would cause delay in establishing the Presidential vote tabulation, as well as all other County and State races.  It would also undermine faith in the Electoral System.

Finally, the Court has to determine would there be harm to the public interest.  This Court finds the answer is a resounding yes.  Granting Plaintiffs' requested relief would interfere with the Michigan's selection of Presidential electors needed to vote on December 14, 2020.  Delay past December 14, 2020 could disenfranchise Michigan voters from having their state electors participate in the Electoral College vote.

Conclusion

Plaintiffs rely on numerous affidavits from election challengers who paint a picture of sinister fraudulent activities occurring both openly in the TCF Center and under the cloak of darkness.  The challengers' conclusions are decidedly contradicted by the highly-respected former State Elections Director Christopher Thomas who spent hours and hours at the TCF Center November 3rd and 4th explaining processes to challengers and resolving disputes.  Mr. Thomas' account of the November 3rd and 4th events at the TCF Center is consistent with the affidavits of challengers David Jaffe, Donna MacKenzie and Jeffrey Zimmerman, as well as former Detroit City Election Official, now contractor, Daniel Baxter and City of Detroit Corporation Counsel Lawrence Garcia.

12

Perhaps if Plaintiffs' election challenger affiants had attended the October 29, 2020 walk-through of the TCF Center ballot counting location, questions and concerns could have been answered in advance of Election Day.  Regrettably, they did not and, therefore, Plaintiffs' affiants did not have a full understanding of the TCF absent ballot tabulation process.  No formal challenges were filed.  However, sinister, fraudulent motives were ascribed to the process and the City of Detroit.  Plaintiffs' interpretation of events is incorrect and not credible.

Plaintiffs are unable to meet their burden for the relief sought and for the above mentioned reasons, the Plaintiffs' petition for injunctive relief is DENIED.  The Court further finds that no basis exists for the protective order for the reasons identified above. Therefore, that motion is DENIED.  Finally, the Court finds that MCL 168.31a governs the audit process.  The motion for an independent audit is DENIED.

It is so ordered.

This is not a final order and does not close the case.

November 13, 2020

Hon. Timothy M. Kenny
Chief Judge
Third Judicial Circuit Court of Michigan

# EXHIBIT 2

STATE OF MICHIGAN

IN THE THIRD JUDICIAL CIRCUIT COURT FOR THE COUNTY OF WAYNE

Sarah Stoddard and
Election Integrity Fund,

v

Hon. Timothy M. Kenny
Case No. 20-014604-CZ

City Election Commission of
The City of Detroit and
Janice Winfrey, in her official
Capacity as Detroit City Clerk and
Chairperson of the City Election
Commission, and
Wayne County Board of
Canvassers,
_____/

## **OPINION & ORDER**

At a session of this Court
Held on: November 6, 2020
In the Coleman A. Young Municipal Center
County of Wayne, Detroit, MI

PRESENT: Honorable Timothy M. Kenny
Chief Judge
Third Judicial Circuit Court of Michigan

   Plaintiffs Sarah Stoddard and the Election Integrity Fund petition this Court for
preliminary injunctive relief seeking:
   1.   Defendants be required to retain all original and duplicate ballots and poll books.
   2.   The Wayne County Board of Canvassers not certify the election results until both
        Republican and Democratic party inspectors compare the duplicate ballots with
        original ballots.
   3.   The Wayne County Board of Canvassers unseal all ballot containers and remove
        all duplicate and original ballots for comparison purposes.
   4.   The Court provide expedited discovery to plaintiffs, such as limited
        interrogatories and depositions.

1

20-014604-CZ  FILED  IN MY OFFICE   Cathy M. Garrett   WAYNE COUNTY CLERK   11/9/2020 7:39 AM   Matthew Johnson

When considering a petition for injunctive relief the Court must apply the following four-prong test:

1. The likelihood the party seeking the injunction will prevail on the merits.
2. The danger the party seeking the injunction will suffer irreparable harm if the injunction is not granted.
3. The risk the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the injunction.
4. The harm to the public interest if the injunction is issued.  *Davis v City of Detroit Financial Review Team*, 296 Mich. App. 568, 613; 821 NW2d 896 (2012).

In the *Davis* opinion, the Court also stated that injunctive relief "represents an extraordinary and drastic use of judicial power that should be employed sparingly and only with full conviction of its urgent necessity" Id at 612 fn 135, quoting *Senior Accountants, Analysts & Appraisers Ass'n v. Detroit*, 218 Mich. App. 263, 269; 553 NW2d 679 (1996).

When deciding whether injunctive relief is appropriate MCR 3.310 (A)(4) indicates that the plaintiff bears the burden of proving the preliminary injunction should be granted.

Plaintiffs' pleadings do not persuade this Court that they are likely to prevail on the merits for several reasons.  First, this Court believes plaintiffs misinterpret the required placement of major party inspectors at the absent voter counting board location.  MCL 168.765a (10) states in part "At least one election inspector from each major political party must be present at the absent voter counting place..."  While plaintiffs contends the statutory section mandates there be a Republican and Democratic inspector at each table inside the room, the statute does not identify this requirement.  This Court believes the plain language of the statute requires there be election inspectors at the TCF Center facility, the site of the absentee counting effort.

Pursuant to MCL 168.73a the County chairs for Republican and Democratic parties were permitted and did submit names of absent voter counting board inspectors to the City of Detroit Clerk.  Consistent with MCL 168.674, the Detroit City Clerk did make appointments of inspectors.  Both Republican and Democratic inspectors were present throughout the absent voter counting board location.

An affidavit supplied by Lawrence Garcia, Corporation Counsel for the City of Detroit, indicated he was present throughout the time of the counting of absentee

ballots at the TCF Center.  Mr. Garcia indicated there were always Republican and Democratic inspectors there at the location.  He also indicated he was unaware of any unresolved counting activity problems.

By contrast, plaintiffs do not offer any affidavits or specific eyewitness evidence to substantiate their assertions.  Plaintiffs merely assert in their verified complaint "Hundreds or thousands of ballots were duplicated solely by Democratic party inspectors and then counted."  Plaintiffs' allegation is mere speculation.

Plaintiffs' pleadings do not set forth a cause of action.  They seek discovery in hopes of finding facts to establish a cause of action.  Since there is no cause of action, the injunctive relief remedy is unavailable.  *Terlecki v Stewart*, 278 Mich. App. 644; 754 NW2d 899 (2008).

The Court must also consider whether plaintiffs will suffer irreparable harm. Irreparable harm requires "A particularized showing of concrete irreparable harm or injury in order to obtain a preliminary injunction."  *Michigan Coalition of State Employee Unions v Michigan Civil Service Commission*, 465 Mich. 212, 225; 634 NW2d 692, (2001).

In *Dunlap v City of Southfield*, 54 Mich. App. 398, 403; 221 NW2d 237 (1974), the Michigan Court of Appeals stated "An injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural."

In the present case, Plaintiffs allege that the preparation and submission of "duplicate ballots" for "false reads" without the presence of inspectors of both parties violates both state law, MCL 168.765a (10), and the Secretary of State election manual.  However, Plaintiffs fail to identify the occurrence and scope of any alleged violation  The only "substantive" allegation appears in paragraph 15 of the First Amended Complaint, where Plaintiffs' allege "on information and belief" that hundreds or thousands of ballots have been impacted by this improper practice.  Plaintiffs' Supplemental Motion fails to present any further specifics.  In short, the motion is based upon speculation and conjecture.  Absent any evidence of an improper practice, the Court cannot identify if this alleged violation occurred, and, if it did, the frequency of such violations.  Consequently, Plaintiffs fail to move past mere apprehension of a future injury or to establish that a threatened injury is more than speculative or conjectural.

This Court finds that it is mere speculation by plaintiffs that hundreds or thousands of ballots have, in fact, been changed and presumably falsified. Even with this assertion, plaintiffs do have several other remedies available. Plaintiffs are entitled to bring their challenge to the Wayne County Board of Canvassers pursuant to MCL 168.801 *et seq.* and MCL 168.821 *et seq.* Additionally, plaintiffs can file for a recount of the vote if they believe the canvass of the votes suffers from fraud or mistake. MCL168.865-168.868. Thus, this Court cannot conclude that plaintiffs would experience irreparable harm if a preliminary injunction were not issued.

Additionally, this Court must consider whether plaintiffs would be harmed more by the absence of injunctive relief than the defendants would be harmed with one.

If this Court denied plaintiffs' request for injunctive relief, the statutory ability to seek relief from the Wayne County Board of Canvassers (MCL 168.801 et seq. and MCL 168.821 et seq.) and also through a recount (MCL 168.865-868) would be available. By contrast, injunctive relief granted in this case could potentially delay the counting of ballots in this County and therefore in the state. Such delays could jeopardize Detroit's, Wayne County's, and Michigan's ability to certify the election. This in turn could impede the ability of Michigan's elector's to participate in the Electoral College.

Finally, the Court must consider the harm to the public interest. A delay in counting and finalizing the votes from the City of Detroit without any evidentiary basis for doing so, engenders a lack of confidence in the City of Detroit to conduct full and fair elections. The City of Detroit should not be harmed when there is no evidence to support accusations of voter fraud.

Clearly, every legitimate vote should be counted. Plaintiffs contend this has not been done in the 2020 Presidential election. However, plaintiffs have made only a claim but have offered no evidence to support their assertions. Plaintiffs are unable to meet their burden for the relief sought and for the above-mentioned reasons, the plaintiffs' petition for injunctive relief is denied.

It is so ordered.

November 6, 2020
Date

Hon. Timothy M. Kenny
Chief Judge
Third Judicial Circuit Court of Michigan

4

# EXHIBIT 3

# STATE OF MICHIGAN

# COURT OF CLAIMS

DONALD J. TRUMP FOR PRESIDENT, INC.
and ERIC OSTEGREN,

               Plaintiffs,

v

JOCELYN BENSON, in her official capacity as
Secretary of State,

               Defendants.

_____/

**OPINION AND ORDER**

Case No.  20-000225-MZ

Hon. Cynthia Diane Stephens

 

Pending before the Court are two motions.  The first is plaintiffs' November 4, 2020 emergency motion for declaratory relief under MCR 2.605(D).  For the reasons stated on the record and incorporated herein, the motion is DENIED.  Also pending before the Court is the motion to intervene as a plaintiff filed by the Democratic National Committee.  Because the relief requested by plaintiffs in this case will not issue, the Court DENIES as moot the motion to intervene.

According to the allegations in plaintiffs' complaint, plaintiff Eric Ostegren is a credentialed election challenger under MCL 168.730.  Paragraph 2 of the complaint alleges that plaintiff Ostegren was "excluded from the counting board during the absent voter ballot review process."  The complaint does not specify when, where, or by whom plaintiff was excluded.  Nor does the complaint provide any details about why the alleged exclusion occurred.

The complaint contains allegations concerning absent voter ballot drop-boxes.  Plaintiffs allege that state law requires that ballot containers must be monitored by video surveillance. Plaintiff contends that election challengers must be given an opportunity to observe video of ballot drop-boxes with referencing the provision(s) of the statute that purportedly grant such access, . See MCL 168.761d(4)(c).

Plaintiffs' emergency motion asks the Court to order all counting and processing of absentee ballots to cease until an "election inspector" from each political party is allowed to be present at every absent voter counting board, and asks that this court require the Secretary of State to order the immediate segregation of all ballots that are not being inspected and monitored as required by law.  Plaintiffs argue that the Secretary of State's failure to act has undermined the rights of all Michigan voters.  While the advocate at oral argument posited the prayer for relief as one to order "meaningful access" to the ballot tabulation process, plaintiffs have asked the Court to enter a preliminary injunction to enjoin the counting of ballots.   A party requesting this "extraordinary and drastic use of judicial power" must convince the Court of the necessity of the relief based on the following factors:

> (1) the likelihood that the party seeking the injunction will prevail on the merits,
> (2) the danger that the party seeking the injunction will suffer irreparable harm if
> the injunction is not issued, (3) the risk that the party seeking the injunction would
> be harmed more by the absence of an injunction than the opposing party would be
> by the granting of the relief, and (4) the harm to the public interest if the injunction
> is issued.  [*Davis v Detroit Fin Review Team*, 296 Mich App 568, 613; 821 NW2d
> 896 (2012).]

As stated on the record at the November 5, 2020 hearing, plaintiffs are not entitled to the extraordinary form of emergency relief they have requested.

I.    SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

## A.  OSTEGREN CLAIM

Plaintiff Ostegren avers that he was removed from an absent voter counting board.  It is true that the Secretary of State has general supervisory control over the conduct of elections.  See MCL 168.21; MCL 168.31.  However, the day-to-day operation of an absent voter counting board is controlled by the pertinent city or township clerk.  See MCL 168.764d.  The complaint does not allege that the Secretary of State was a party to or had knowledge of, the alleged exclusion of plaintiff Ostegren from the unnamed absent voter counting board.  Moreover, the Court notes that recent guidance from the Secretary of State, as was detailed in matter before this Court in *Carra et al v Benson et al*, Docket No. 20-000211-MZ, expressly advised local election officials to admit credentialed election challengers, provided that the challengers adhered to face-covering and social-distancing requirements.  Thus, allegations regarding the purported conduct of an unknown local election official do not lend themselves to the issuance of a remedy against the Secretary of State.

## B.  CONNARN AFFIDAVIT

Plaintiffs have submitted what they refer to as "supplemental evidence" in support of their request for relief.  The evidence consists of: (1) an affidavit from Jessica Connarn, a designated poll watcher; and (2) a photograph of a handwritten yellow sticky note.  In her affidavit, Connarn avers that, when she was working as a poll watcher, she was contacted by an unnamed poll worker who was allegedly "being told by other hired poll workers at her table to change the date the ballot was received when entering ballots into the computer."  She avers that this unnamed poll worker later handed her a sticky note that says "entered receive date as 11/2/20 on 11/4/20."  Plaintiffs contend that this documentary evidence confirms that some unnamed persons engaged in

fraudulent activity in order to count invalid absent voter ballots that were received after election day.

This "supplemental evidence" is inadmissible as hearsay.  The assertion that Connarn was informed by an unknown individual what "other hired poll workers at her table" had been told is inadmissible hearsay within hearsay, and plaintiffs have provided no hearsay exception for either level of hearsay that would warrant consideration of the evidence.  See MRE 801(c).  The note—which is vague and equivocal—is likewise hearsay.  And again, plaintiffs have not presented an argument as to why the Court could consider the same, given the general prohibitions against hearsay evidence.  See *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 105; 776 NW2d 114 (2009).  Moreover, even overlooking the evidentiary issues, the Court notes that there are still no allegations implicating the Secretary of State's general supervisory control over the conduct of elections.  Rather, any alleged action would have been taken by some unknown individual at a polling location.

## C.  BALLOT BOX VIDEOS

It should be noted at the outset that the statute providing for video surveillance of drop boxes only applies to those boxes that were installed after October 1, 2020.  See MCL 168.761d(2).  There is no evidence in the record whether there are any boxes subject to this requirement, how many there are, or where they are.  The plaintiffs have not cited any statutory authority that requires any video to be subject to review by election challengers.  They have not presented this Court with any statute making the Secretary of State responsible for maintaining a database of such boxes.  The clear language of the statute directs that "[t]he city or township clerk must use video monitoring of that drop box to ensure effective monitoring of that drop box." MCL 168.761d(4)(c)  Additionally, plaintiffs have not directed the Court's attention to any authority directing the

-4-

Secretary of State to segregate the ballots that come from such drop-boxes, thereby undermining plaintiffs' request to have such ballots segregated from other ballots, and rendering it impossible for the Court to grant the requested relief against this defendant.  Not only can the relief requested not issue against the Secretary of State, who is the only named defendant in this action, but the factual record does not support the relief requested.  As a result, plaintiffs are unable to show a likelihood of success on the merits.

## II.    MOOTNESS

Moreover, even if the requested relief could issue against the Secretary of State, the Court notes that the complaint and emergency motion were not filed until approximately 4:00 p.m. on November 4, 2020—despite being announced to various media outlets much earlier in the day.  By the time this action was filed, the votes had largely been counted, and the counting is now complete.  Accordingly, and even assuming the requested relief were available against the Secretary of State—and overlooking the problems with the factual and evidentiary record noted above—the matter is now moot, as it is impossible to issue the requested relief.  See *Gleason v Kincaid*, 323 Mich App 308, 314; 917 NW2d 685 (2018)

IT IS HEREBY ORDERED that plaintiff's November 4, 2020 emergency motion for declaratory judgment is DENIED.

IT IS HEREBY FURTHER ORDERED that proposed intervenor's motion to intervene is DENIED as MOOT.

This is not a final order and it does not resolve the last pending claim or close the case.

November 6, 2020

_____

Cynthia Diane Stephens
Judge, Court of Claims