## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

DONALD J. TRUMP FOR
PRESIDENT, INC.; *et al.*,

          Plaintiffs,

      v.

JOCELYN BENSON, in her capacity
as Michigan Secretary of State; *et al.*,

          Defendants.

Civil Action No.: 20-cv-01083

Honorable Janet T. Neff

**DEFENDANT-INTERVENORS MICHIGAN STATE CONFERENCE
NAACP, WENDELL ANTHONY, YVONNE WHITE, AND ANDREW
WILKES'S CONCURRENCE IN MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………ii

CONCISE STATEMENT OF REASONS……………………………1

INTRODUCTION……………………………………………………..2

ARGUMENT………………………………………………………….3

I.      The Doctrine of Laches Bars Plaintiffs' After-the-Fact
Attempt to Invalidate the Election………...……………………3

II.     Plaintiffs' Requested Relief Is Unavailable as a Matter
of Law………………………………………………………..8

        A. Plaintiffs' Requested Relief Would Defy
Well-Established Federal and Michigan Law………….8

        B. Plaintiffs' Requested Relief Would Itself Violate
Voters' Constitutional Rights by Arbitrarily
Disenfranchising Voters, Including Voters of Color…..10

CONCLUSION……………………………………………………….13

i

# TABLE OF AUTHORITIES

**Cases**

*Amtrak v. Morgan*, 536 U.S. 101 (2002) ...................................................................4

*Baber v. Dunlap*, 349 F. Supp. 3d 68 (D. Me. 2018) ...............................................8

*Berry v. Chrysler*, 150 F.2d 1002 (6th Cir. 1945) ....................................................4

*Bush v. Gore*, 531 U.S. 98 (2000) (per curiam).......................................................11

*Carlson v. Ritchie*, 830 N.W.2d 887 (Minn. 2013) ...................................................5

*Carnes v. Livingston County Bd. of Ed.*, 341 Mich. 600, 67 N.W.2d 795 (1954).....9

*City of L.A. v. Cty. of Kern*, 509 F. Supp. 2d 865 (C.D. Cal. 2007) .......................12

*Costello v. United States*, 365 U.S. 265 (1961) .......................................................4

*Donald J. Trump for President, Inc. v. Benson*, No. 20-0000225-MZ
(Mich. Ct. Cl. Nov. 4, 2020) .....................................................................................7

*E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006) ....................4

*Gent v. CUNA Mutual Ins. Society,* 611 F.3d 79 (1st Cir. 2010) ............................6

*Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978).......................................................9

*Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177 (4th Cir. 1983)......................4

*Herron v. Herron*, 255 F.2d 589 (5th Cir. 1958)......................................................4

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008)..........................9

*Lewis v. Cayetano*, 823 P.2d 738 (Haw. 1992) ........................................................5

*Powell v. Power*, 436 F.2d 84 (2d Cir. 1970) ...........................................................8

*R.S.B. Ventures, Inc. v. FDIC*, 514 F. App'x 853 (11th Cir. 2013)...........................6

*Rosenbrock v. School Dist. No. 3*, 344 Mich. 335, 74 N.W.2d 32 (1955)................9

*Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176
(11th Cir. 1988).........................................................................................................4

*Thompson v. Cihak*, 254 Mich. 641, 236 N.W. 893 (1931).......................................9

*Toney v. White*, 488 F.2d 310 (5th Cir. 1973) .........................................................4

*United States v. City of Cambridge, Md.*, 799 F.2d 137 (4th Cir. 1986)...................5

*United States v. Classic*, 313 U.S. 299 (1941).........................................................11

*Warf v. Board of Elections of Green County, Ky.*, 619 F.3d 553 (6th Cir. 2010) .....9

**Statutes**

Mich. Comp. Law § 168.730(1)..................................................................................6

Mich. Comp. Law § 168.765a(13)..............................................................................6

## CONCISE STATEMENT OF REASONS

1. Plaintiffs' failure to assert several of their claims in a timely manner will cause severe prejudice and those claims are, therefore, barred under the doctrine of laches.

2. The extraordinary relief sought by the Plaintiffs is unprecedented and cannot be justified by the allegations in the Plaintiffs' complaint.

## INTRODUCTION

Plaintiffs seek unprecedented and unconscionable relief in this case. Over a week after the presidential election ended, and after all votes across Michigan had been properly counted, the Plaintiffs filed this lawsuit, seeking to throw out results from just one of Michigan's 83 counties. *See* Compl. p. 30, cl. B. By targeting Wayne County, the Plaintiffs' requested relief would effectively disenfranchise over seven hundred and fifty thousand voters, including nearly half of Michigan's Black population. Plaintiffs argue that this undemocratic, heavy-handed, and racially disproportionate remedy is necessary to address vague, unsubstantiated claims about alleged voter fraud, purported irregularities with voting machines, duplication of ballots, and other aspects of election administration impacting a small number of votes, and the amount and quality of access Republican challengers had to review election processes and alleged interference with that access. No court has ever granted the sort of relief sought under any circumstances, let alone the frivolous allegations pressed by Plaintiffs here. Plaintiffs had ample opportunity to assert several of their claims earlier, in a less disruptive manner, but chose to wait until now in an effort to overturn entirely the democratic will of voters in Wayne County and Michigan.

In this concurrence with the motion to dismiss filed by the Michigan Democratic Party, Defendant-Intervenors Michigan State Conference NAACP

2

("Michigan NAACP"), Yvonne White, Wendell Anthony, and Andre Wilkes, supplement the many meritorious grounds for dismissal explained by others. The concurrence offers the perspective of voters—particularly Michigan's voters of color who stand most at risk of disenfranchisement from the dangerous and unprecedented remedy sought by Plaintiffs—and offers additional reasons why this Court should dismiss this case under FED. R. CIV. P. 12(b)(6).

## ARGUMENT

**I.     The Doctrine of Laches Bars Plaintiffs' After-the-Fact Attempt to Invalidate the Election.**

Plaintiffs argue that hundreds of thousands of valid votes should be set aside based on nonspecific and speculative accounts of purported election irregularities implicating a small number of ballots, and dissatisfaction with the access and treatment of Republican challengers during the counting of absentee ballots. *See* Compl. ¶ 77. But Plaintiffs knew or should have known the state-imposed limits on challengers prior to entering the TCF Center in Wayne County, where absent ballots were counted, and they had ample opportunity to raise objections to those limits before Election Day. The law requires challenges to election procedures to be raised before the election is conducted. This rule protects voters and reflects common sense: pre-election challenges allow problems to be fixed *before* the election is held, without disrupting votes *after* they have been cast.

3

This bedrock rule of election law is a forceful application of laches. The equitable doctrine of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Amtrak v. Morgan*, 536 U.S. 101, 121-22 (2002). "Laches consists of two elements: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party." *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 439 (6th Cir. 2006); *Costello v. United States*, 365 U.S. 265, 282 (1961); *see also Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958) ("laches may be asserted by motion to dismiss for failure to state a claim—provided that the complaint shows affirmatively that the claim is barred.") citing *Berry v. Chrysler*, 150 F.2d 1002, 1003-04 (6th Cir. 1945).

Since overturning the results of an election is an extraordinary intervention by the judiciary into democratic processes, a challenge to election procedures should be brought *when there is still time to correct those procedures*. Otherwise, parties could "'lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)). "[C]ourts have been wary lest the granting of post-election relief encourage sandbagging on the part of wily plaintiffs." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (11th Cir. 1988).

Numerous cases confirm this "general rule" of election law: "a candidate or other election participants should not be allowed to ambush an adversary or subvert the election process by intentionally delaying a request for remedial action to see first whether they will be successful at the polls." *United States v. City of Cambridge, Md.*, 799 F.2d 137, 141 (4th Cir. 1986); *see also, e.g.*, *Carlson v. Ritchie*, 830 N.W.2d 887, 892 (Minn. 2013) ("[P]etitioners cannot wait until after elections are over to raise challenges that could have been addressed before the election."); *Lewis v. Cayetano*, 823 P.2d 738, 741 (Haw. 1992) (laches barred post-election challenge to form of ballot, where voters had at least constructive notice of the form for a month prior to the election).

Plaintiffs filed this lawsuit a week after Election Day, and several days after counting had been completed in Michigan. Their complaints about the way the election was run and specifically about whether Republican challengers had meaningful access to the absent voter counting process could have been raised well before Election Day or, at the latest, during the counting process. Instead, Plaintiffs waited to file this challenge until after the vote counting process had been completed, in a thinly veiled effort to reverse entirely the outcome of the election in Michigan.

Michigan law on challenger access to the counting of absentee votes was clear well in advance of Election Day. Parties are entitled to designate "2 challengers to serve in precincts at any 1 time" and "not more than 1 challenger to serve at each

5

counting board." Mich. Comp. Law § 168.730(1). Under her authority to issue

"instructions . . . for the conduct of absent voter counting boards," on October 28,

Secretary Benson issued updated guidance relating to challengers and counting

boards that further described public health measures planned for the 2020

presidential election. Mich. Comp. Law § 168.765a(13); *November 3, 2020 Election*

*Polling Place Safety and Accessibility*, Mich. Bureau of Elections, (Oct. 28, 2020),

https://www.michigan.gov/documents/sos/Michigan_BOE_Safe_

Election_Guidelines_10_16_2020_705272_7.pdf.[1]  In this guidance, challengers

were notified that, in light of the COVID-19 pandemic, mask wearing and social

distancing would be strictly enforced during the counting of absentee ballots.

In their complaint, Plaintiffs seek to expand access for Republican challengers

beyond what is required under state law or guidance. Plaintiffs do not allege that

they were denied the opportunity to have the number of challengers present provided

for under Michigan election law. Instead, they raise concerns that certain individuals

who sought to serve as Republican challengers were not provided access to the TCF

Center and that particular challengers who left the Center were not subsequently

readmitted. *See* Compl. ¶¶ 27-28. In raising these claims, Plaintiffs are effectively

---

[1] On a motion to dismiss, the Court may take judicial notice of publicly available material on government websites. *R.S.B. Ventures, Inc. v. FDIC*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of the information on the FDIC's website); *Gent v. CUNA Mutual Ins. Society*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of facts from the Center for Disease Control and Prevention website).

challenging the limitations on challengers imposed by Michigan law. Similarly,

Plaintiffs' complaint about the implementation of social distancing guidelines during

the absentee ballot counting process, and the lack of challenger access to video

surveillance of ballot dropboxes both amount to challenges to state-issued guidance

and election processes. *See Id.* at ¶¶ 30-31, 56-59. Plaintiffs had ample notice of

these laws, guidance, and procedures, and they could have filed this lawsuit in

advance of Election Day.

To the extent Plaintiffs raise claims about the conduct of election officials that

arose only during the counting process of absentee ballots, they could have filed this

challenge during the process itself. *See* Compl. ¶¶ 32-36, 40-41, 43-51, 54-55.

Indeed, Plaintiffs filed an unsuccessful state-court lawsuit making many of the same

allegations that they include in the complaint before this Court. *See* ECF No. 10-7,

Verified Compl. for Immediate Declaratory & Injunctive Relief, *Donald J. Trump*

*for President, Inc. v. Benson*, No. 20-0000225-MZ (Mich. Ct. Cl. Nov. 4, 2020).

If Plaintiffs were right that challengers were entitled to greater access to the

counting process than was permitted by state and local officials (they are not), they

could have informed Defendants about their concerns and raised challenges in state

and federal court in the weeks or months in advance of Election Day. Plaintiffs'

delay in asserting these claims until after election officials completed counting every

vote, clearly prejudices the hundreds of thousands of voters in Wayne County who

7

cast lawful ballots but who are, if Plaintiffs' case is allowed to proceed, at risk of disenfranchisement. This includes Intervenors like Wendell Anthony, Yvonne White, and Andre Wilkes, and the members of the Michigan NAACP, who took all necessary steps to ensure that their votes counted in this election.

## II.     Plaintiffs' Requested Relief Is Unavailable as a Matter of Law.

Because of their unreasonable delay, it is too late for Plaintiffs to seek remedies that are tailored to the asserted violations (such as requiring that challengers be provided additional access). Instead they seek mass disenfranchisement. Even if state or county officials committed some error, that cannot justify depriving millions of Michigan voters of their right to a say in who will be President. This is a classic case in which "the cure [is] worse than the alleged disease, at least insofar as the professed concern is with the right of voters to cast effective ballots in a fair election." *Baber v. Dunlap*, 349 F. Supp. 3d 68, 76 (D. Me. 2018).

### A. Plaintiffs' Requested Relief Would Defy Well-Established Federal and Michigan Law

Plaintiffs' notion that any alleged error in election administration can be a basis for tossing out election results is deeply impractical and at odds with centuries of law. Courts have refused to "believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970);

8

*see also League of Women Voters v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) ("[T]he federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election."). The Sixth Circuit is in accord, observing that only in "extraordinary circumstances will a challenge to a state [or local] election rise to the level of a constitutional deprivation." *Warf v. Board of Elections of Green County, Ky.*, 619 F.3d 553, 559 (6th Cir. 2010). Federal Courts "have uniformly declined to endorse [constitutional challenges] with respect to garden variety election irregularities." *Id*. citing *Griffin*, 570 F.2d at 1076.

Similarly, Michigan law does not contemplate invalidating an election for slight irregularities, especially where voters are not to blame for those irregularities. *Rosenbrock v. School Dist. No. 3*, 344 Mich. 335, 74 N.W.2d 32 (1955); *Thompson v. Cihak*, 254 Mich. 641, 236 N.W. 893 (1931). The Michigan Supreme Court has held that even the failure of election officials to comply with the technical requirements of statutory directives should not permit the disenfranchisement of voters, "when there is no reason to conclude that the will of a majority of those present and voting was thwarted." *Carnes v. Livingston County Bd. of Ed.*, 341 Mich. 600, 67 N.W.2d 795 (1954). While courts will consider evidence that irregularities consisted of "fraud or coercion," "fraudulent intentions may not be lightly assumed . . . but must be shown by satisfactory proofs." *Id*.; *Rosenbrock*, 344 Mich. at 339.

Plaintiffs' Complaint does not include any concrete evidence of fraud or impropriety, systemic or otherwise. Instead, Plaintiffs ask the Court to assume widespread fraud and impropriety in Wayne County based on vague anecdotes from Republican challengers about alleged election administration irregularities, reports of alleged voting machine issues in other counties, and on their complaints about challengers' allegedly limited and disrupted access to the absentee ballot counting process. None of the anecdotes Plaintiffs rely upon provide details about who committed the alleged fraud or irregularity, or how it was committed, let alone any evidence to suggest that the alleged conduct was pervasive and affected any significant number of ballots. Consequently, as a matter of law, Plaintiffs' claims cannot justify the extreme and unprecedented relief requested.

### B. Plaintiffs' Requested Relief Would Itself Violate Voters' Constitutional Rights by Arbitrarily Disenfranchising Voters, Including Voters of Color

While Plaintiffs' prayer for relief leads with a request that this Court bar Defendants from certifying the results of the 2020 presidential election in Wayne County that include certain classes of voters, it would have the effect of disenfranchising every voter in Wayne County. As a result, Plaintiffs' requested relief would result in Michigan's selecting its presidential electors without

accounting for the votes of nearly half of its Black citizens. Such an order would obviously violate the Constitution.

"When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam). The right to vote includes "the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941). The relief sought here would violate rights safeguarded by the Fourteenth Amendment's Due Process Clause. *Bush v. Gore*, 531 U.S. at 110. Plaintiffs request that this Court disenfranchise hundreds of thousands without providing any concrete evidence that a single voter during the 2020 presidential election was ineligible to vote or alleged to have engaged in any misconduct. To the contrary, there is no specific allegation that any vote cast was cast by anyone other than an eligible voter who followed the directives of election officials as to the method of casting their vote. The Fourteenth Amendment does not permit the Government to nullify the fundamental right to vote on such an arbitrary basis.

Plaintiffs' proposed remedy would also create an enormous equal protection violation. Plaintiffs single out Wayne County for disenfranchisement for problems that they allege occurred across the state of Michigan. For instance, Plaintiffs allege that election officials experienced problems with voting machines in Antrim County,

and that similar machines were used across Michigan, including in Wayne County. *See* Compl. ¶¶ 60-67. While the Plaintiffs do not provide any evidence that the voting machines in Wayne experienced problems similar to those alleged to have occurred in Antrim, Plaintiffs ask this Court to throw out ballots used on those machines in *only* Wayne County. This would create unconstitutional disparities between the treatment of voters who live in the one targeted county and those who live elsewhere.

Finally, Plaintiffs' requested relief would have a tremendous impact on registered Michigan voters who are persons of color. According to the U.S. Census Bureau, there are approximately 505,000 Black citizens of voting age in Wayne County, all of whom Plaintiffs ask this Court to disenfranchise.[2] *See* https://www.census.gov/programs-surveys/decennial-census/about/voting-rights/cvap.2018.html (last visited Nov. 17, 2020). Black citizens of voting age make up nearly 40% of Wayne County's total population of citizens of voting age. This is the highest proportion of Black citizens of voting age residing in any county in Michigan. *Id*. While disenfranchisement on this scale is shocking enough, the picture is even more dire when the number of votes that Plaintiff seeks to exclude are viewed in proportion to the total number of Black voters in Michigan. Approximately half of all Black citizens of voting age in Michigan live in Wayne County. *See id.*

---

[2] *See supra* pg. 4, n.1. Courts can take notice of voter registration statistics on a motion to dismiss. *See City of L.A. v. Cty. of Kern*, 509 F. Supp. 2d 865, 876 n.7 (C.D. Cal. 2007) (taking judicial notice of county voter statistics), *rev'd on other grounds*, 581 F.3d 841 (9th Cir. 2009).

(indicating that there are 1,004,320 Black citizens of voting age in Michigan). *Id.*

Thus, Plaintiffs ask the Court to order the unprecedented remedy of potentially

disenfranchising *about half* of all Black voters in the State. Plaintiffs' utter lack of

evidence of any voter fraud or other significant irregularities in Michigan's

presidential election does not justify the wholesale exclusion of these votes.

## CONCLUSION

For all the foregoing reasons and others set forth in the Michigan Democratic

Party's motion to dismiss, the Court should dismiss the Complaint.

13

Dated:  November 18, 2020                    Respectfully submitted,

/s/__Eugene Driker_____
Eugene Driker (P12959)
Stephen E. Glazek (P23186)
Daniel M. Share (P26903)
Barris, Sott, Denn & Driker, P.L.L.C.
333 West Fort Street, Suite 1200
Detroit, MI  48226
(313) 965-9725
edriker@bsdd.com
sglazek@bsdd.com
dshare@bsdd.com

Kristen Clarke
Jon Greenbaum
Ezra Rosenberg
LAWYERS COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org

*Counsel for Intervenor- Defendants*

14

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY on this 18th day of November that the above concurrence in Defendant-Intervenor Michigan Democratic Party's motion to dismiss contains fewer than 10,800 words (2,918).


Dated: November 18, 2020                          /s/ Eugene Driker

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing concurrence in Defendant-

Intervenor Michigan Democratic Party's motion to dismiss was filed electronically

and served on Plaintiffs' counsel of record via the ECF system of the U.S. District

Court for the Western District of Michigan.


Dated: November 18, 2020                                    /s/ Eugene Driker